# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 11-CR-00062-01** |
| | * | |
| **VERSUS** | * | **JUDGE HICKS** |
| | * | |
| **WILLIAM BARTON** | * | **MAGISTRATE JUDGE HORNSBY** |

### UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

The defendant, an inmate currently incarcerated at FCI Seagoville, seeks compassionate release based on concerns arising from the COVID-19 pandemic.  For the reasons set forth below, this Court should deny that motion.

### RELEVANT BACKGROUND

On September 13, 2011, the defendant, WILLIAM BARTON, pled guilty to participating in a child exploitation enterprise, in violation of Title 18, United States Code, Section 2252A(g). On January 13, 2012, the defendant was sentenced to 327 months in prison, followed by lifetime supervised release.

The evidence presented in the factual basis for the plea and in the Presentence Investigation Report (PSR) demonstrate that the defendant joined the Dreamboard child exploitation bulletin board in October of 2009. Dreamboard was an on-line bulletin board that allowed members to obtain and distribute child pornography to others who were members of the board. The defendant made 801 posts on the Dreamboard child pornography bulletin board.

1

Prior to joining Dreamboard, in 2004, the defendant was convicted in Washington State of dealing in depictions of minors engaged in sexually explicit conduct, and possession of depictions of minors engaged in sexually explicit conduct.

On March 26, 2020, the defendant submitted a request for compassionate release to the Warden's Compassionate Release Committee; that request specifically addressed concerns related to the COVID-19 pandemic. On April 10, 2020, the request for compassionate release was denied.  The defendant did not appeal the denial of his claim either to the Warden or to the Office of General Counsel (OGC); however, thirty (30) days have elapsed since he submitted his administrative request for relief.

## LAW AND ARGUMENT

### 1 The defendant is not entitled to compassionate release, so his motion should be denied.

"[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 825 (2010) (cleaned up). Consistent with that principle of finality, 18 U.S.C. § 3582(c) provides that a court generally "may not modify a term of imprisonment once it has been imposed," except in three circumstances: (1) upon a motion for reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), such as that presented by the defendant; (2) "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure," 18 U.S.C. § 3582(c)(1)(B); and (3) where the defendant was sentenced based on a retroactively lowered sentencing range, 18 U.S.C. § 3582(c)(2).

2

Relevant here, under § 3582(c)(1)(A), a court may reduce a term of imprisonment upon finding "extraordinary and compelling circumstances," consistent with guideline policy statements.  Under the statute as amended by the First Step Act, the Court may act "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  *Id.*   In this case, the defendant exhausted his administrative remedies by filing a request for relief from the Warden, which was denied and, though he did not appeal the Warden's determination to the OGC, thirty (30) days has elapsed since the time he filed his request.

Nonetheless, the defendant's motion fails on the merits.  First, his COVID-19-related concerns do not constitute "extraordinary and compelling reasons" under the compassionate release statute.  Section 3582(c)(1)(A) provides that any reduction must be "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  Here, the applicable policy statement, U.S.S.G. § 1B1.13, provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the

safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is: (1) suffering from a serious physical or medical condition, (2) suffering from a serious functional or cognitive impairment, or (3) experiencing deteriorating physical or mental health because of the aging process, any of which substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility, and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets forth other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C). Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, cmt. n.1(D).

With regard to the last consideration relating to "extraordinary and compelling reasons" identified by the Director, BOP has issued a regulation defining its own consideration of compassionate release requests. *See* BOP Program Statement

5050.50.[1]   This program statement was amended effective January 17, 2019, following the First Step Act's passage.  It sets forth in detail BOP's definition of the circumstances that may support a request for compassionate release, limited to the same bases the Sentencing Commission identified: serious medical condition, advanced age, and family circumstances.

The defendant argues that the changes to 18 U.S.C. § 3582(C)(1)(A)(i) made by the First Step Act have vested this Court with authority to identify the extraordinary and compelling circumstances that may warrant a sentence reduction. But that is not true. The First Step Act left unchanged a critical statutory command: any reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." Here, the applicable policy statement provides no basis for a sentence reduction based on concern regarding the length of a previously imposed sentence.

As before, Congress has directed the Sentencing Commission to determine the permissible grounds for compassionate release. That directive is expressed in several statutes. Congress directed the Sentencing Commission to adopt policy statements regarding "the appropriate use of . . . the sentence modification provisions set forth in section[ ] . . . 3582(c) of title 18." 28 U.S.C. § 994(a)(2)(C). Providing further guidance, Section 994(t) states: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in § 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific

---

[1] Available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf .

examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." And finally, as stated, § 3582(c)(1)(A) conditions judicial relief on fidelity to the applicable policy statement, which appears at U.S.S.G. § 1B1.13.

The defendant suggests that the resulting guideline is only advisory, but that is not true of this guideline. This policy statement is binding under the express terms of Section 3582(c)(1)(A), and because it concerns only possible sentence reductions, not increases, it is not subject to the rule of *Booker v. United States*, 543 U.S. 220 (2005), that any guideline that increases a sentence must be deemed advisory.

This issue was resolved by *Dillon v. United States*, 560 U.S. 817 (2010), which makes clear that the statutory requirement in § 3582, that a court heed the restrictions stated by the Sentencing Commission, is binding. *Dillon* concerned a motion for a reduction in sentence under 18 U.S.C. § 3582(c)(2). That subsection allows such an action "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"—language identical to that which appears in Section 3582(c)(1)(A) with respect to a court's consideration of a motion for compassionate release ("if it finds . . . that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"). The Supreme Court in *Dillon* held that the Commission's pertinent policy statement concerning retroactive guideline amendments (U.S.S.G. § 1B1.10) is binding, particularly its directive that a permissible sentence reduction is limited to the bottom of the revised guideline range, without application of the rule of *Booker*. *See Dillon*, 560 U.S. at 826.

6

Every consideration identified in *Dillon* appears here. A motion for compassionate release rests on an act of Congressional lenity. It appears under the same prefatory language of Section 3582(c) ("The court may not modify a term of imprisonment once it has been imposed except that"), and explicitly refers to an action to "reduce" a sentence. It applies only to a limited class of prisoners, and does not warrant a full resentencing procedure. There is no basis for any conclusion other than that the statutory language is binding: a court may reduce a sentence based on "extraordinary and compelling reasons" only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

Thus, the defendant's position, that Congress aimed to afford courts discretion to determine in individual cases whether there is a basis for a sentence reduction, simply ignores the text of the actual statutes, not to mention the *Dillon* decision. This Court should reject that argument. See e.g., *United States v. Ebbers*, 2020 WL 91399, *4 (S.D.N.Y. Jan. 8, 2020) (noting that in amending § 3582(c) in the First Step Act, "Congress in fact only expanded access to the courts; it did not change the standard").

In his motion, the defendant asserts he is entitled to compassionate release because he is 69 years of age, and suffers from PTSD, high blood pressure, and high cholesterol. First, the United States acknowledges that in certain circumstances, the COVID-19 outbreak may affect whether an inmate can show an "extraordinary and compelling reason" warranting compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Specifically, if an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill

7

from COVID-19,[2] that condition, in the light of the pandemic, may rise to the level of "extraordinary and compelling reasons for purposes of § 3582(c)(1)(A). Under those circumstances, a chronic condition (i.e., one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[ ] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I). Similarly, in light of COVID-19, a defendant "experiencing deteriorating physical or mental health because of the aging process" may be found to have a substantially diminished ability to provide self-care within the environment of a correctional facility, even where the defendant's age-related decline in health otherwise would not have qualified. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(III).

Finally, as part of its analysis of the totality of circumstances, this Court should consider whether the inmate is more likely to contract COVID-19 if he or she is released than if he or she remains incarcerated. This will typically turn on the inmate's proposed release plans, and whether a known outbreak has occurred at his institution.

Under these criteria, the defendant has not established "extraordinary and compelling reasons" justifying compassionate release. First, though Barton asserts he suffers from advanced age, PSD, high blood pressure and high cholesterol, all of

---

[2] *See* Centers for Disease Control, At Risk for Severe Illness, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last modified Apr. 2, 2020).

which make him more vulnerable to becoming seriously ill if he contracts COVID-19, he has not provided any documentation of his asserted medical conditions and therefore cannot meet his burden of establishing an entitlement to a sentence reduction.  His motion may be denied on that ground alone.  *See United States v. Clark*, 2020 WL 1557397, *4 (M.D. La. Apr. 1, 2020) (recognizing that "[g]enerally, the defendant has the burden to show circumstances meeting the test for compassionate release"); *see also, United States v. Aguila*, 2020 WL 1812159, at *2 (E.D. Cal. Apr. 9, 2020) ("Although Defendant claims he has high blood pressure, high cholesterol, sleep apnea, and diabetes, Defendant fails to provide evidence to verify these claims."); *United States v. Lotts,* 2020 WL 835298 (D.N.M. Feb. 20, 2020) (denying the motion where the defendant did not provide the court with any evidence substantiating his purported conditions or their severity).  The defendant provided no medical records related to his high blood pressure or high cholesterol, or assuming the conditions exist, their severity and/or the extent to which they impair his ability to care for himself.

Second, though, age, hypertension and high cholesterol are among those conditions identified by the CDC as increasing a person's risk for developing serious illness from COVID-19, the defendant has submitted nothing to demonstrate that those conditions cannot be adequately treated by the BOP. The defendant, in his request for administrative relief, asserted that these same conditions would be a basis for compassionate release, and BOP concluded that the conditions did not rise to such a level as to justify the defendant's release.

Both before and since the COVID-19 outbreak, courts have denied compassionate release motions involving defendants with similar/and even more serious than the defendant's.   *See e.g., United States v. Mitchell*, 2020 WL 544703 (W.D. Ark. Feb. 3, 2020) (denying compassionate release as to a defendant who suffered from ordinary geriatric issues, including hypertension, gastroesophageal reflux disease, lower back pain, and benign prostatic hyperplasia, as  those did not prevent him from holding a job or providing self-care); *United States v. Lynn*, 2019 WL 3082202, at *2 (S.D. Ala. July 15, 2019) (denying compassionate release for a defendant who complained of chronic kidney failure, atrial fibrillation, 70% blockage in multiple coronary arteries, high cholesterol, cervical disc degeneration, enlarged prostate, and other ailments, as none of those conditions was terminal, or substantially diminished his ability to provide self-care within the environment of a correctional facility); *United States v. Malone*, 2019 WL 3337906, at *2 (W.D. Va. July 25, 2019) (rejecting the compassionate release request of a 68-year-old inmate suffering from cancer; "I do not doubt that Malone's imprisonment is made more severe by his condition, for which I have sympathy. However, the federal prison system contains many inmates who have medical conditions that make confinement more difficult. I do not believe that the intent of the Sentencing Commission's Policy Statement is to reach all such inmates.")]; *United States v. Feiling*, 2020 WL 1821457, at *7-8 (E.D. Va. Apr. 10, 2020) (post-COVID-19, denying a compassionate release motion filed by a 71-year-old who suffers from a variety of ailments including heart and respiratory diseases; though his conditions put him at risk of an adverse outcome

10

from COVID-19, he failed to show a greater risk of contracting the disease in prison, in relation to his risk in the community, particularly since the BOP where he was housed had no reported cases of COVID-19); *United States v. Ramos*, 2020 WL 1685812, at *2 (S.D.N.Y. Apr. 7, 2020) (post-COVID-19, denying a motion for release based on a finding the defendant's asthma was well-controlled); *United States v. Gagne*, 2020 WL 1640152, at *5 (D. Conn. Apr. 2, 2020) (post-COVID-19, denying compassionate release to a defendant suffering from symptoms resulting from multiple sclerosis; "Defendant has not presented information to show that her specific medical conditions, medications, and conditions of confinement at FCI Danbury are inclined to uniquely and adversely affect her to the degree sufficient to establish "extraordinary and compelling" reasons. Nor has the Defendant shown that the BOP's response to confirmed cases at FCI Danbury has been inadequate from a medical standpoint.").

Third, even if the defendant's COVID-19 concerns qualify as extraordinary and compelling circumstances under the policy statement, he has not shown that the BOP is incapable of managing the situation so that release is warranted. *See United States v. Weidenhamer,* 2019 WL 6050264, at *5 (D. Ariz. Nov. 8, 2019) ("To be faithful to the statutory language requiring 'extraordinary and compelling reasons,' it is not enough that Defendant suffers from two chronic conditions that she is not expected to recover from. Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release."). Foremost, there is no evidence that the defendant's conditions are anything other than stable, treatable, and currently well-managed by

11

BOP. The defendant does not address at all whether he is being treated. It is the defendant's burden to demonstrate that the BOP is not/cannot manage his condition. The defendant has submitted nothing in support of that proposition.

Further, with specific regard to the effect of the COVID-19 pandemic, as the Attorney General's April 3, 2020, memorandum reflects, the BOP is modifying its response to the virus on a daily—even hourly—basis, paying even greater attention to those BOP facilities hardest hit by COVID-19, and prioritizing the release of at-risk prisoners to home confinement. April 3, 2020 Memorandum at pp. 1-2. *See Raia*, ___ F.3d at ___, 2020 WL 1647922, at *2 (noting BOP's "extensive and professional efforts to curtail the virus's spread.").

Indeed, BOP has been planning for potential COVID-19 transmissions since January 2020, establishing a working group to develop policies in consultation with subject matter experts in the Centers for Disease Control, informed by guidance from the World Health Organization. BOP's March 13, 2020, Phase Two Action Plan to minimize the risk of COVID-19 transmission into and inside its facilities comprises several preventive and mitigation measures, including the following:

- Screening of Inmates and Staff: All new BOP inmates are screened for COVID-19 symptoms and risk of exposure. Asymptomatic inmates with a documented risk of exposure will be quarantined; symptomatic inmates with documented risk of exposure will be isolated and tested pursuant to local health authority protocols. In areas with sustained community transmission and in medical referral centers, all facility staff will be screened for self-reported risk factors and elevated temperatures.

- Restrictions on Contractor Access: Access to BOP facilities is restricted to only those performing essential services (e.g., medical or mental health care, religious, etc.) or those who perform necessary maintenance on essential systems. All volunteer visits are suspended absent authorization by the BOP

Deputy Director.  Any contractor or volunteer who requires access will be screened using the same procedures as applied to staff prior to entry.

- Suspension of Social Visits and Tours: BOP has placed a 30-day hold on all social visits, such as visits from friends and family, to limit the number of people entering the facility and interacting with detainees.  To ensure that familial relationships are maintained throughout this disruption, BOP has increased detainees' telephone allowance to 500 minutes per month.  Tours of facilities are also suspended for at least the first 30 days that the Action Plan is in effect.

- Suspension of Legal Visits: BOP has also placed a 30-day hold on legal visits, though such visits will be permitted on a case-by-case basis after the attorney has been screened for infection in accordance with the screening protocols for prison staff.

- Suspension of Inmate Movements: With limited exceptions, BOP has also ceased the movement of inmates and detainees among its facilities, and all inmates who are set to be moved are first being screened for COVID-19 symptoms.  This will prevent transmissions between institutional populations.  Likewise, all official staff travel has been cancelled, as has most staff training.

- Modified Operations: The Action Plan requires wardens at BOP facilities to modify operations in order to maximize social distancing.  Among the possible actions are staggering of meal times and recreation time.

The Phase Two Action Plan has been effective in combatting the spread of COVID-19. FCI Seagoville, the BOP facility in which the defendant is housed, has reported a single case of COVID-19 in an inmate and zero cases among staff members. There have been no COVID-19 related deaths at FCI Seagoville.[3] Further, BOP's adaptations to the ongoing crisis are continuous; subsequent phases of its COVID-19 mitigation plan include new provisions addressing increased social distancing, and restrictions on the movement of inmates within and outside BOP facilities.  *See* BOP March 31, 2020 Statement, "COVID-19 Action Plan: Phase Five" (addressing

---

[3] See chart at https://www.bop.gov/coronavirus/

modifications to the original anti-COVID-19 protocols).

Overlapping with the foregoing analysis is the additional requirement that the Court must consider the 18 U.S.C. § 3553(a) factors, as "applicable." *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020) (affirming the denial of compassionate release where the district court properly relied on the fact that an inmate suffering from terminal cancer had a violent criminal history, had committed a violent offense, and had served less than half the sentence imposed); *see also*, *Watson*, 2020 WL 1890541, at *3 (noting that granting the defendant's motion would "minimize the severity of his offense," as even under current law, he would face a substantial sentence of 42 years on certain firearms charges alone, and he had served only "a small fraction" of the sentence originally imposed by the court).  In the defendant's case, release is similarly unwarranted because of the nature of his conviction and his prior criminal history.

Contrary to the defendant's contention, the crime of which he was convicted and for which he is currently incarcerated, is a crime of violence. 18 U.S.C. § 3156(a)(4) defines which offenses constitute crimes of violence. They include all violations of chapter 110 of Title 18 United States Code. The defendant was convicted of participating in a child exploitation enterprise in violation of 18 U.S.C. § 2252A(g), a crime falling within chapter 110 of Title 18.  Also, as noted in the presentence report, the defendant has two prior convictions for child exploitation offenses. Those convictions are also crimes of violence. This demonstrates that the defendant is a danger to the community. Significantly, Congress determined that a defendant

14

convicted of 18 U.S.C. § 2252A(g), the crime of which the defendant was convicted, is required to serve mandatory minimum of 20 years in prison. The defendant has served a fraction of that 20-year mandatory minimum. To release him would be inconsistent with Congressional intent.

Accordingly, this Court should independently deny the defendant's motion because he has not demonstrated that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" governing pretrial release or detention.[4]   U.S.S.G.   § 1B1.13(2); *Watson*, 2020 WL 1890541, at (additionally finding the defendant was not eligible for compassionate release because he pose a danger to the community in light of the offense of conviction (six armed robberies), his lengthy criminal history as set forth in the PSR, and his various disciplinary infractions in prison, which "contradict[ ] his claims that imprisonment has changed him.").

## CONCLUSION

The defendant's motion for compassionate release should be denied.

<div style="margin-left:auto">

Respectfully submitted,

DAVID C. JOSEPH
UNITED STATES ATTORNEY

 s/John Luke Walker
JOHN LUKE WALKER
Assistant United States Attorney

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 1, 2020, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing has been sent to Inmate William Barton, 41135-086, Federal Correctional Institution, P.O. Box 9000, Seagoville, TX 75159 via first class United States mail.

<u> s/John Luke Walker</u>
JOHN LUKE WALKER
Assistant United States Attorney

16